AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
By: SHEB SWETT
    DANIEL G. NESSIM
One St. Andrew's Plaza
New York, New York 10007
Tel: (212) 637-6522

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

UNITED STATES OF AMERICA,

                        Plaintiff,

                - v. -

$136,096.57 FORMERLY ON DEPOSIT IN
CAPITAL ONE BANK ACCOUNT 7528402644,
HELD IN THE NAME OF "CONCILIATION
USA, INC.," AND ALL FUNDS TRACEABLE
THERETO, INCLUDING ACCRUED
INTEREST,

and

$285,874.95 FORMERLY ON DEPOSIT IN
KEARNY BANK ACCOUNT 294401377,
HELD IN THE NAME OF "TRM
MULTISERVICE LLC," AND ALL FUNDS
TRACEABLE THERETO, INCLUDING
ACCRUED INTEREST,

                        Defendants-*in-rem*.

------------------------------------------------------

**VERIFIED CIVIL
COMPLAINT FOR
FORFEITURE**

**21 Civ. _____**

Plaintiff United States of America, by its attorney, Audrey Strauss, Acting United

States Attorney for the Southern District of New York, for its verified civil complaint, alleges,

upon information and belief, as follows:

## I. JURISDICTION AND VENUE

1.      This action is brought pursuant to Title 18, United States Code, Section

981(a)(1)(C) by the United States of America seeking the forfeiture of the following:

a. $136,096.57 in United States currency formerly on deposit in Capital One Bank Account 7528402644, held in the name of "Conciliation USA Inc.," (the "Conciliation Account"), and

b. $285,874.95 in United States currency formerly on deposit in Kearny Bank Account 294401377, held in the name of "TRM Multiservice LLC," (the "TRM Account"),

(a and b collectively, the "Defendants-*in-rem*").

2.     This Court has original jurisdiction over this forfeiture action pursuant to Title 28, United States Code, Sections 1345 and 1355.

3.     Venue is proper pursuant to Title 28, United States Code, Section 1355 (b)(1)(A) because the acts and omissions giving rise to the forfeiture took place in the Southern District of New York.

4.     As set forth below, there is probable cause to believe that the Defendants-*in-rem* are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as proceeds traceable to bank fraud in violation of Title 18, United States Code, Sections 1344, or property traceable thereto.

## II. PROBABLE CAUSE FOR FORFEITURE

5.     Commencing in or about August 2019, Homeland Security Investigations ("HSI") began an investigation into two businesses, Conciliation USA Inc. ("Conciliation") and TRM Multiservice LLC ("TRM" and, together with Conciliation, the "Companies").

6.     On or about January 6, 2017, an individual named Harold Martinez ("Martinez") opened the Conciliation Account on behalf of Conciliation.

7.     On or about July 24, 2019, an individual named Luis Toribio ("Toribio")

opened the TRM Account on behalf of TRM.

8.     Conciliation and TRM each operated as a money transmitting business, and used the Conciliation Account and TRM Account, respectively, in order to carry out transactions in connection with that business. In particular, as set forth below, certain transactions in the Conciliation Account are connected to cross-border money transfers on the Black Market Peso Exchange ("BMPE").

9.     At the time the Conciliation Account and the TRM Account were opened, and at other times, Martinez and Toribio falsely represented to their respective banks that the Companies were engaged in businesses other than money transmitting.  Conciliation was purportedly a "software development company" and TRM a "Technology Wholesale Reseller."

10.     On or about September 9, 2020, the Hon. Robert W. Lehrburger, United States Magistrate Judge for the Southern District of New York issued a seizure warrant captioned 20 Mag. 9605, for the Defendants-*in-rem*.

<u>Background on the Black Market Peso Exchange</u>

11.     The BMPE is a shadow financial system by which individuals, companies, and organization, including criminal organizations, can repatriate funds from the United States to other countries while avoiding the regulated financial system.

12.     Those who have amassed bulk United States currency will sell that currency to BMPE brokers at a discount, who retrieve the bulk cash in the United States and deposit it into shell accounts in the United States while paying for the bulk cash in the currency of the destination country.

13.     At the same time, the BMPE brokers will purchase bulk currency from individuals in repatriating country who wish to transfer money to the United States while

circumventing the banking system. The BMPE brokers will pay for these pesos by transferring U.S. currency from the U.S.-based shell accounts to accounts controlled by the individuals.

14.     The BMPE relies on shell accounts in the United States that can receive bulk United States currency and then transfer that currency to its ultimate destination. These shell accounts are characterized by a large number of transactions from numerous counterparties. Moreover, the money going into the shell accounts typically matches the money going out of the shell accounts, except that the shell accounts will typically take in slightly more than they send out as retain the difference as a payment for services.

<u>Conciliation</u>

15.     In or about October 2016, Conciliation was registered in New York State and is still registered as an active corporation in New York State

16.     On or about January 6, 2017, Martinez opened the Conciliation Account at a Capital One Bank branch located in Manhattan, New York, on behalf of Conciliation. Martinez was the sole signatory on the account. The listed address for The Conciliation Account was an apartment on Fort Washington Avenue, in Manhattan, New York, which is associated with Martinez.

17.     In a loan application dated on or about May 5, 2020, Martinez stated that he was the President of Conciliation and that Toribio was an employee of Conciliation.

18.     In or about November 2019, Capital One Bank contacted the phone number associated with the Conciliation Account to conduct a "Know Your Customer" inquiry. A Capital One Bank representative spoke with an individual representing himself to be Martinez, who stated, in sum and substance, that Conciliation was a software development company.

19.     In truth, however, Conciliation operated as a money transmitting business. For example, between on or about January 1, 2019 and on or about August 31, 2020, the Conciliation Account engaged in the following transactions, among others, in furtherance of that business:

a.     The Conciliation Account engaged in a high volume of transactions with a large number of counterparties. There were over 1,000 separate transactions in which the Conciliation Account either received money or sent out money, involving hundreds of counterparties. Indeed, between on or about January 1, 2019 and on or about August 31, 2020, the Conciliation Account received approximately $5,034,416.96 from over 100 separate entities and individuals. During that same time, the Conciliation Account sent out approximately $4,944,112.03 to approximately 175 entities and individuals. This volume of incoming, and outgoing transactions reflects the operation of a money transmitting business, rather than a software development company.

b.     Outgoing payments were made to all types of companies, including import-export companies, cellphone companies, automobile companies, and textile companies. Further, the Conciliation Account received and sent money all around the world, including accounts located in Singapore, China, Italy, Panama, the Dominican Republic, and the UAE.

20.     Some of the specific transactions in the Conciliation Account appear to be linked to companies known or believed to be operating on the BMPE. For example, among other transactions:

a.     On or about July 9, 2020, the Conciliation Account sent approximately $50,000 to a company based in Florida ("Company-1"). Company-1 has been the target of law enforcement investigations for its role in transmitting narcotics proceeds over the

BMPE.  Law enforcement agents have wired narcotics proceeds to Company-1 at the direction of money-laundering brokers as part of undercover operations to develop evidence of money-laundering operations.

        b.      The Conciliation Account sent a total of approximately $190,000 to a Venezuelan company ("Company-2") in four separate transactions between January 2020 and July 2020. Company-2 is purportedly an import-export company, yet records show that Company-2 has not received or sent out any imports or exports since 2015.

        c.      Similarly, the Conciliation Account sent a total of approximately $130,000 to a Miami, Florida company ("Company-3") in three separate transactions in or about October 2019 and November 2019. Company-3 is purportedly an import-export company, yet records show that Company-3 has not received or sent out any imports or exports.

21.      In a voluntary interview with law enforcement officers on September 10, 2020, Toribio stated, in sum and substance, that he was the owner of Conciliation, and that Conciliation was a software development company that sold check inspector technology.

22.      However, in an affidavit Toribio signed on December 14, 2020 and filed in the Southern District of New York on December 15, 2020 (the "Toribio Affidavit"), Toribio, in his capacity as "Treasurer, but not an owner" of Conciliation, stated that Conciliation acts as an "agent/delegate" of Englewood International Services, Inc. ("EIS"), a company licensed as a money transmitting business by the State of New Jersey. A copy of the Toribio Affidavit is attached hereto as <u>Exhibit A</u>.

23.      New York law, New Jersey law, and federal law all require anyone operating a money transmitting business to be licensed. A licensed money transmitting business must, among other things, conduct various monitoring and reporting activities, such as the filing

of currency transaction reports ("CTRs") and suspicious activity reports ("SARs"). Because of the nature of money transmitting businesses, many banks subject these businesses to greater scrutiny.

24. Capital One Bank, for example, considers money transmitting businesses high risk. Before opening an account for a money transmitting business, Capital One Bank will require additional documentation, including evidence of registration and an existing compliance program, and will conduct a site visit to the business location.

25. By fraudulently misrepresenting the business purpose of Conciliation to Capital One Bank, Martinez intentionally concealed this information and deprived Capital One Bank of valuable economic information. Further Martinez, Toribio and Conciliation obtained and distributed funds from the Conciliation Account by means of the false and fraudulent pretense and representation that Conciliation was a software development company, rather than a money transmitting business.

## TRM

26. On or about February 16, 2016, TRM was registered in New Jersey and is still registered as an active entity in New Jersey. Toribio is listed as the "member/manager" and authorized representative of TRM. TRM's corporate purpose is listed as serving as a "Technology Wholesalers Reseller."  A residential address in New Jersey has been provided as TRM's business address and address for service of process.

27. On or about July 24, 2019, Toribio opened the TRM Account at Kearny Bank in New Jersey. Among other documents, Toribio provided a "Certificate of Formation" in which TRM was described as a "Technology Wholesalers Reseller."

28. At the account opening, Toribio represented to employees of Kearny Bank

that the TRM Account would be used on behalf of a technology business. Toribio showed an employee of Kearny Bank an example of a cellphone application that was part of TRM's business. At no point did Toribio disclose that TRM would engage in a money transmitting business. Such disclosure would have triggered additional scrutiny under Kearny Bank's internal policies.

29.    In truth, however, TRM operated as a money transmitting business.  For example, between on or about July 24, 2019 and on or about February 23, 2020, the TRM Account engaged in the following transactions, among others, in furtherance of that business:

a.    The TRM Account engaged in a high volume of transactions with a large number of counterparties. There were hundreds of separate transactions in which the TRM Account either received money or sent out money, involving dozens of counterparties. During this time period, the TRM Account received deposits of approximately $2.65 million.  These deposits were almost always large, round dollar amounts from both domestic and international counterparties.  These deposits were often followed by checks drafted on the account.  During this time period the TRM Account also transferred out approximately $2.38 million. This volume of incoming, and outgoing transactions reflects the operation of a money transmitting business, rather than a "Technology Wholesalers Reseller."

b.    The counterparties to these transactions were located both throughout the United States as well as overseas. For example, the TRM Account sent money to or received money from accounts located in the Dominican Republic and Panama, among other locations.

30.    On or about August 21, 2020, TRM registered with FinCEN as a money transmitting business.

31.    The Toribio Affidavit states, in sum and substance, that TRM is an authorized agent/delegate for EIS.

32.    By fraudulently misrepresenting its business purpose to bank representatives at Kearny Bank when it opened the TRM Account, Toribio intentionally concealed this information and deprived Kearny Bank of valuable economic information. Further Toribio and TRM obtained and distributed funds from the TRM Account by means of the false and fraudulent pretense and representation that TRM was a technology wholesalers reseller, rather than a money transmitting business.

<u>Toribio Directs a Scheme to Defraud Banks</u>

33.    The Toribio Affidavit states, in sum and substance, that Toribio operates a money transmitting business through EIS, and that Conciliation and TRM are authorized agents of EIS. As noted previously, this contradicts the information provided to Capital One Bank and Kearny Bank regarding the Conciliation Account and the TRM Account, respectively.

34.    In addition to the Conciliation Account and the TRM Account, Toribio has directed other individuals to open bank accounts at different banks to facilitate his money transmitting business. Many of these accounts were subsequently closed by the banks due to suspicious activity.

35.    Toribio instructed some of these individuals not to tell the banks that the accounts would be used for a money transmitting business. For example, in 2016 Toribio directed an individual to open a Citibank account and tell Citibank that the business sold office supplies, when in fact the account would be used for money transmitting.

36.    Accordingly, the Defendants-*in-rem* are subject to forfeiture to the United States as property constituting or derived from proceeds traceable to bank fraud, or a conspiracy

to commit such offense.

### III.  CLAIM FOR FORFEITURE

**Forfeiture Under 18 U.S.C. § 981(a)(1)(C)**
**(Property Constituting or Derived from Proceeds Traceable to a Violation of 18 U.S.C.**
**§  1344, or Property Traceable to Such Property)**

37.     Paragraphs 1 through 36 of this Complaint are repeated and re-alleged as if fully set forth herein.

38.     Pursuant to Title 18, United States Code Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" as defined in section 1956(c)(7) of this title, or a conspiracy to commit such offense.

39.     As set forth above, for purposes of Section 1956, "specified unlawful activity" includes bank fraud, in violation of 18 U.S.C. § 1344.

40.     Title 18, United States Code, Section 1344 provides, in relevant part:

Whoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises, shall be fined under this title or imprisoned not more than 30 years, or both.

41.     By reason of the foregoing the Defendants-*in-rem* are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) as property constituting or derived from proceeds traceable to a violation of Title 18, United States Code, Sections 1344, or as property traceable to such property.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendants-*in-rem* and that all persons having an interest in the Defendants-*in-rem* be cited to appear and show cause why the forfeiture should not be decreed,

and that this Court decree forfeiture of the Defendants-*in-rem* to the United States of America for

disposition according to law, and that this Court grant plaintiff such further relief as this Court

may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
January 8, 2021

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
Attorney for the Plaintiff
United States of America

By: _____

Sheb Swett
Daniel G. Nessim
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-6522

## <u>DECLARATION OF VERIFICATION</u>

DEREK AMALBERT, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury that he is a Special Agent with Homeland Security Investigations; that he has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to the best of his knowledge, information and belief; and that the sources of his information and the grounds of his belief are his personal involvement in the investigation, and conversations with and documents prepared by law enforcement officers and others.

Executed on January 8, 2021

_____
DEREK AMALBERT
Special Agent
Homeland Security Investigations

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK_____x

LUIS TORIBIO,
LORUEL MULTI SERVICE LLC,                                    **PLAINTIFF LUIS TORIBIO'S**
ENGLEWOOD INTERNATIONAL SERVICES, INC.,          **AFFIDAVIT IN SUPPORT**
TRM MULTISERVICE LLC, and                                     **OF RULE 41(g) MOTION**
CONCILIATION USA INC,                                              **FOR RETURN OF**
                                                                                       **SEIZED PROPERTY AND**
                                                                                       **REMOVAL OF FREEZE**
                                                                                       **ON BANK ACCOUNT**

                                            Plaintiffs,

            -against-

WILLIAM J. BARR, as Attorney General
of the United States,                                                     Case No. 20-MC-742
DEPARTMENT OF JUSTICE,
TIMOTHY J. SHEA, as Acting Director of
the Drug Enforcement Administration,
DRUG ENFORCEMENT ADMINISTRATION,
CHAD F. WOLF, as Acting Secretary of the
Department of Homeland Security, and
DEPARTMENT OF HOMELAND SECURITY,

                                            Defendants.
_____x

STATE OF NEW YORK        )
COUNTY OF THE BRONX ) ss:

        LUIS TORIBIO, being duly sworn, deposes and says, to the best of his information and

belief, as follows:

1.  I am the Individual Plaintiff in the captioned action. I am fully familiar with the facts

    and circumstances underlying this application for equitable relief. I am either the sole

    owner of or a part owner and/or officer of the Corporate Plaintiffs, and I am

    authorized to make this application on their behalf.

2.  I respectfully submit this affidavit, pursuant to Rule 41(g) of the Federal Rules of

    Civil Procedure and 18 USC §§983(a)(1)(A ) and 983(a)(1)(F), in support of my

                                            1

motion, individually and on behalf of the corporate plaintiffs, for equitable relief in an

order directing the Defendants WILLIAM J. BARR, as Attorney General of the

United States, the DEPARTMENT OF JUSTICE, TIMOTHY J. SHEA, as Acting

Director of the Drug Enforcement Administration, the DRUG ENFORCEMENT

ADMINISTRATION, CHAD F. WOLF, as Acting Secretary of the Department of

Homeland Security, and the DEPARTMENT OF HOMELAND SECURITY,

as represented by the United States Attorney's Office for the Southern District of

New York (collectively "the Government"), to take the following actions:

    a) the return to me of my personal property and my business files and

       electronic equipment, as well as a cell phone and iPad belonging to my

       deceased wife, that were seized by agents of the above defendants on

       September 10, 2020 from the ground floor commercial space and the first-

       floor residential space at 709 East 183rd Street, Bronx, NY ("the

       Premises"), pursuant to a search and seizure warrant for the Premises ("the

       Warrant," a copy of which is attached as Exhibit 1), issued in this Court at

       the application of the United States Attorney in this district ("the US

       Attorney"); and

    b) the removal of the freeze imposed on the business account in the name of

       Corporate Plaintiff CONCILIATION USA INC. ("Conciliation") at

       Capital One Bank, located at 211 Dyckman Street, New York, NY 10040

       ("the Conciliation Account"), with a balance of $136,096.57, which was

       obtained by the Government either pursuant to a court order at the

       application of the US Attorney or was imposed administratively by Capital

2

One Bank at the behest of agents involved in the investigation into my

money services business with regard to which the Warrant was issued.

**The Aggrieved Parties**

3. I am a 38-year-old widower and the single parent of, and sole provider for, my three

minor children. For the past 5 years we have resided in our family home in Pompton

Plains, New Jersey. Additionally, I have owned/resided at the Bronx Premises for the

past 20 years. I have never had any problems with law enforcement and I have never,

to my knowledge, been the subject of a criminal investigation previously.

4. I am a businessman and the sole owner of Corporate Plaintiff LORUEL MULTI

SERVICE, LLC. ("Loruel"), my business in New York, which provides bookkeeping,

tax preparation and general business consulting services for numerous individual and

small business clients throughout the New York metropolitan area and northern New

Jersey. However, Loruel is not, and never has been, in the money transmission

business or conducted any fund transfers for its clients or anyone else.

5. I am also the sole owner, through Loruel, of Corporate Plaintiff ENGLEWOOD

INTERNATIONAL SERVICES, INC. ("EIS"), which is my business in New Jersey.

EIS is a money transmitter company duly licensed in the State of New Jersey and is

registered with the U.S. Treasury Department's Financial Crimes Enforcement

Network ("FinCEN") as a money services business ("MSB"). The current FinCEN

registration of EIS is MSB Registration Number 31000149758087. The company's

current license with the New Jersey Department of Banking and Insurance is No.

L067333 and is valid through June 30, 2021.

3

6. Among its services EIS processes Social Security and other checks payable in US dollars to its clients, many of whom are retirees living in their native Dominican Republic. All of EIS's services were conducted on behalf of customers located in the Dominican Republic. EIS performs this service through the clearing of its clients' US dollar checks through the Conciliation Account for subsequent transfer and currency conversion into Dominican Pesos for its clients residing in that country. EIS has no US resident clients.

7. I am an owner and the Treasurer of Corporate Plaintiff TRM MULTISERVICE LLC. ("TRM"), which is also registered with FinCEN. TRM is an authorized agent/delegate for EIS in servicing EIS's clients in the Dominican Republic.

8. I am the Treasurer, but not an owner, of Conciliation, which also acts as an agent/delegate of EIS and facilitates the servicing of EIS's Dominican clients by maintaining the Conciliation Account. Conciliation had previously been registered with FinCEN as an MSB, but through an apparent oversight, its registration was not renewed by its owners. I am advised, however, that as EIS's agents, neither Conciliation nor TRM are required to independently register as MSBs wit FinCEN.

**The Seizure of My Business Equipment and Files and the Freeze of the Conciliation Account Are the Result of the Government's Misconceptions**

9. Although it is evident from the face of the Warrant that the search conducted by the agents on September 10th was in furtherance of an alleged money laundering and unlicensed money transmitting services violations, the US Attorney, for over 3 months, has kept us in the dark about the basis for that investigation and as to what exactly the agents expected to find in my records, documents, computer equipment,

4

electronic files and the outdoor security camera hard drive which they carried away from the Premises.

10. The seized property and documents are described in general terms in the DEA Receipt form (attached as Exhibit 2), which the agents had filled out and handed to me after they concluded the search. During the seizure the agents covered surveillance cameras at the Premises with loose leaf papers and tape, presumably to avoid a recording of the raid.

11. During the execution of the Warrant, as they were seizing and carrying off all the computer equipment, documents, and files from the Premises, including my late wife's laptop and cell phone, the agents kept asking me questions about my businesses and how they operated. Their questions made it obvious to me that they had no idea how I conducted my businesses, and that they were completely misinformed about the interaction between EIS, which provides currency conversion services, and TRM and Conciliation, both of which function as agents for EIS in maintaining bank accounts through which US Dollar checks payable to EIS's clients are cleared.

12. The Government has steadfastly refused to provide any information to my attorneys, Oscar Herasme and Ephraim Savitt, about its investigation, despite their telephone messages and correspondence to Assistant US Attorney Daniel G. Nessim ("the AUSA"), who is supervising the investigation. In their messages and correspondence, my attorneys repeatedly requested the opportunity to have a discussion with the AUSA and agents in order to answer any questions they have about my compliance with the federal laws and regulations in running my money transmission services for

5

my clients, all of whom are retired and have moved back to their native Dominican Republic.

13. However, the AUSA has, to date, declined our offer to discuss matters, while indicating that he would do so at some later, undefined date. Three months have transpired since all my business computers and all my business files, as well as many personal items, were seized. While the agents are taking their time, presumably to search my voluminous business documentary and electronic files, for evidence that does not exist, of alleged offences that I did not commit, both my EIS money transmission business and my Loruel bookkeeping/tax consulting business are failing. The Government's actions have also harmed my nearly100 EIS clients in the Dominican Republic, whose funds are frozen in the Conciliation Account, and whom I can no longer service.

14. Without my business files and the release of my clients' funds, I cannot run my businesses, which have come to a standstill. My ability to support my family has continually eroded over the past 3 months to the point where, unless I get the relief requested in this application, I will no longer be able to pay my bills and defray the costs of caring for my children.

15. In their letters of October 26th (attached as Exhibit 3) and November 2nd (attached as Exhibit 4), my attorneys advised the AUSA that my money transmission business, through EIS, TRM and Conciliation, is in complete compliance with the federal anti-money laundering ("AML") regulations in the USA PATRIOT ACT, as well as the currency reporting requirements under the Bank Secrecy Act ("BSA") and other

federal and state statutes pertaining to such businesses. But their letters have been ignored for over 2 months by the AUSA Nessim.

16. In their November 2nd letter (Exhibit 4), my attorneys further advised the AUSA that the continued retention of my business files, particularly those related to Loruel, which is not related to my money transmission business, were destroying not only my money transmission business, but also my unrelated bookkeeping, tax preparation and business consulting services operations. They also informed AUSA Nessim that I had lost my banking privileges at both Capital One Bank and Kearney Bank (pursuant to a parallel seizure in New Jersey) as a result of the freezes imposed on my business accounts in those banks.

17. In their November 2nd letter my attorneys also asked for copies of the warrant applications and resulting court orders authorizing the search warrants in an effort to engage the government in an open and fulsome discussion to resolve any questions the AUSA and his investigators may have regarding my operation of my money transmission services. However, once again, their inquiries were met with silence and the requested documents were not produced.

18. As my attorneys pointed out in both their letters to the AUSA, the continued freeze of the Conciliation Account has worked substantial hardship on me and EIS's clients residing in the Dominican Republic who have been deprived of their funds for the past 3 months.

19. The fundamental problem with the Warrant, as well as the underlying investigation, as my attorneys detailed in their correspondence to the AUSA, is that my money transmitting businesses, EIS, is properly licensed and registered with FinCEN and,

7

furthermore, that TRM and Conciliation are authorized agents for EIS and duly

registered as such with the New Jersey Department of Banking and Insurance.

20. If the Government bothered to verify the information in my attorneys' letters, which

would take very little time and effort to accomplish, it would realize that there was no

basis in fact for the allegations in the Warrant which allowed agents to search and

seize my personal and business property and files from the Premises.

**I Am Being Financially Destroyed by the Government's Retention of My Business Records
and My Clients Are Suffering Because of the Restraints on My Corporate Accounts**

21. My application for the unfreezing of the Conciliation Account is especially time-

sensitive because, as my attorneys informed the AUSA in their correspondence, that

account contains funds that belong, in substantial part, to my clients in the Dominican

Republic, who depend on the currency exchange services I provide through my

corporate businesses. As a result of the freeze, clients residing in the Dominican

Republic have been unfairly deprived of their funds for over 3 months.

22. Especially pressing for me personally are the adverse consequences of the

Government's seizures and retention of all my business files from the Premises. In

seizing my customer files, which agents obtained by breaking locks on my file

cabinets at the Premises, they took tax documents, including tax returns, financial

statements and business records that my clients depend on and which I need in order

to continue offering bookkeeping and tax preparation services. This has effectively

prevented me from conducting not only my money transmission services business,

but also has shut down Loruel which has no relationship at all to money transmission

operations. Over the past 3 months, I have been unable to provide clients with

requested copies of their business and tax records.

8

23. As noted above, other agents executed a search warrant issued in the District of New Jersey, also on September 10th, at my residence in Pompton Plains, New Jersey and also procured a freeze on my business account in Kearny Bank branch in Pompton Plains, which has a balance of $ 285,874.95. A parallel Rule 41(g) motion for the return of the New Jersey property and unfreezing of the Kearny Bank account is being filed in the District of New Jersey, in the Newark division.

24. In all, over $440,000 in funds belonging primarily to clients of EIS in the Dominican Republic have been frozen as a result of the Government's investigation.

**Equitable Relief is Necessary to Avert Continued Unfairness and Economic Harm**

25. The restraints on the Capital One Bank (and Kearny Bank) accounts have effectively put a stop to my continued services to EIS's many individual customers, who certainly have no legal responsibility to FinCEN or to any other agency under the AML or BSA laws. I cannot stress enough that many of EIS's customers are retirees residing in the Dominican Republic who depend on the funds processed through EIS for their living expenses. The continued and prolonged freeze on the accounts has disadvantaged them considerably and resulted in their becoming collateral damage while the government, disregarding its statutory notice requirements, ostensibly continues a flawed grand jury investigation and takes its time reviewing my seized records.

26. It is now well beyond the 60-day deadline for the required notice by the Government of non-judicial forfeiture. The seizures of all my business computer equipment and files from the Premises, as well as personal computers, cell phones and documents, and the freeze on the Conciliation Account occurred over 3 months ago. My

businesses are being ruined, and I am being prevented from earning a living to pay for my home and family expenses.

27. I am suffering real economic harm for which the equitable relief I seek is not only appropriate but, in the absence of any other legal remedy available to me at this juncture, the only means by which I can hope to stem my continued financial losses and to avoid further harm to me, my businesses and my clients in the Dominican Republic. As a result of the restraints on the accounts, I and my companies have been barred by Capital One Bank and Kearny Bank from any future banking relationships. My credit-worthiness has already been crippled and my businesses are effectively shut down, completely undermining my ability to support my family.

28. For all the reasons set forth in this affidavit, as well as in the Attorney Affirmation of Ephraim Savitt and the Affirmation's exhibits, I respectfully ask the Court for an Order directing the Defendants to return the property seized on September 10, 2020 from the Premises, and to take the appropriate actions to remove the continued freeze imposed on the EIS funds in the Conciliation Account.

Dated: Bronx, New York
December 14, 2020

Respectfully yours,

LUIS TORIBIO

Sworn to before me this
14th day of December, 2020

NOTARY PUBLIC
STATE OF NEW YORK

MILAGROS MADERA
NOTARY PUBLIC-STATE OF NEW YORK
No 01MA6087467
Qualified in New York County
My Commission Expires 04-03-2023

10